**CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq. (SBN 227896)
100 N. Barranca Ave., Suite 700
West Covina, CA 91791
Telephone: (800) 787-5616
Fax: (888) 909-7947
sk@consumerlitigationlawcenter.com

Attorney for Plaintiffs, OSIRIS HENDERSON

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSIRIS HENDERSON,<br><br>               Plaintiff,<br><br>        v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC, a Delaware Corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY, successor in interest to NEW CENTURY MORTGAGE COMPANY; ATLANTIC & PACIFIC FORECLOSURE SERVICES, LLC, a Delaware Corporation; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto, and DOES 1 through 25, inclusive,<br><br>               Defendants. | CASE NO:  12-cv-00800-GEB-DAD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Date:**<br>**Date:**   July 30, 2012<br>**Time:**   9:00 a.m.<br>**Ctrm:**   10<br>**Judge:**  Garland E. Burrell, Jr. |

Plaintiff, OSIRIS HENDERSON, herein submits his Opposition to Defendants', CARRINGTON MORTGAGE SERVICES, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE, FOR NEW CENTURY OM EQUITY LOAN

TRUST 2005-3 AND ATLANTIC & PACIFIC FORECLOSURE SERVICES, LLC, Motion for Monetary Sanctions.   Plaintiff opposes Defendant's Motion for Sanctions on the grounds that his FAC does state valid causes of action and that Defendants' Motion for Sanctions is without merit.

The Opposition shall be based on this Opposition, the attached Memorandum of Points and Authorities, on the complete files and records of this action, and on such other oral and/or documentary evidence as may be presented at the hearing on the Motion.


Dated:  July 13, 2012                       CONSUMER LITIGATION LAW CENTER, APC


                                  BY: _/s/ SEPTEMBER J. KATJE_____.
                                      September Katje
                                      Attorney for Plaintiff,
                                      OSIRIS HENDERSON

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................... 1

III.   ARGUMENT ......................................................................................... 2

      A.   Sanctions Against Plaintiffs' Counsel Are NOT Warranted Under FRCP 11 ........ 2

      B.   Plaintiff Stated Valid Claims. .................................................. 3

            1.   Plaintiff is Not Required to Allege Tender. .............................. 3

            2.   Plaintiff Stated a Fraud Claim .............................................. 4

                  a.   Defendants are Successors in Interest. ........................... 4

                  b.   Plaintiff's Fraud Claim is Sufficiently Pled ..................... 6

                  c.   Plaintiff's Fraud Claim is Timely .................................. 7

            3.   Plaintiffs Have Stated a Section 2923.5 Claim. ......................... 7

                  a.   Plaintiff's Claim is Not Pre-Empted by Federal Law. .......... 7

                  b.   Section 2923.5 Contains a Private Right of Action. ............. 8

                  c.   Defendants are in Violation of the Statute. ...................... 9

            4.   Plaintiff Stated a Claim Under HAMP as a Third Party Beneficiary. ...... 10

                  a.   Plaintiff Stated a Claim for Breach of Contract. ................ 10

                  b.   Plaintiff Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. ........................................... 12

            5.   Plaintiff's Fifth Claim for Violation of TILA and Sixth Claim for Rescission are Sufficient. ................................................. 13

                  a.   Plaintiff's Claim for Violation of TILA is Timely Because the Statute of Limitations is Tolled. ................................. 13

                  b.   Plaintiff's Claim for Rescission is Not Based Solely on Defendants' Violation of TILA ...................................... 14

            6.   Plaintiffs Stated a Claim for Violation of sections 17200, et seq. ........... 15

                  a.   Plaintiffs Pled Defendants' Actions were Unlawful. ........... 16

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

        b.   Plaintiffs Pled Defendants' Actions were Unfair. ............................ 16

        c.   Plaintiffs Pled Defendants' Actions were Fraudulent. ...................... 17

    7.   Plaintiff's Eighth Claim for Unfair and Deceptive Business Act Practices
         is Sufficient. ....................................................................................... 17

    8.   Plaintiff Stated a Claim for Declaratory Relief.......................................... 19

    9.   Plaintiffs Stated a Claim for Negligence Because Defendants Owed
         Plaintiff a Duty................................................................................... 20

    10.  Plaintiff Stated a Claim for Quasi-Contract.............................................. 21

    11.  Plaintiff Stated a Claim for Violation of Fair Debt Collection Practices
         Act....................................................................................................... 22

    12.  Plaintiff Stated a Claim for Accounting.................................................... 23

    13.  Plaintiff Stated a Claim for Quiet Title..................................................... 23

IV.   CONCLUSION....................................................................................................... 24

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

**CASES**

*Auerbach v. Great Western Bank*,

  74 Cal. App. 4th 1172 (1999) .................................................................. 12

*Boschma v. Home Loan Center, Inc.*,

  198 Cal. App. 4th 230 (2011)................................................................... 6

*Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.*,

  999 F.2d 745 (3rd Cir. 1993) .................................................................. 2

*Cannon v. University of Chicago*,

  441 U.S. 677 (1979).................................................................................. 8

*Careau & Co. v. Security Pacific Business Credit, Inc.*,

  222 Cal. App. 3d 1371 (1990) ................................................................. 12

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*,

  20 Cal. 4th 163 (1999) ............................................................................. 15

*Committee on Children's Television, Inc. v. General Foods Corp.*,

  35 Cal. 3d 197 (1983) .............................................................................. 15

*County of Santa Clara v. Astra USA, Inc.*,

  588 F.3d 1237 (9th Cir. 2009).................................................................. 10

*Daum v. SpineCare Medical Group, Inc.*,

  52 Cal. App. 4th 1285 (1997) .................................................................. 10

*Emery v. Visa Internat, Service Ass'n*,

  95 Cal. App. 4th 952 (2002) .................................................................... 15

*Esoimem v. Wells Fargo Bank*,

  No. CIV S-1002259 JAM EFB PS (E.D. Cal. Sept. 1, 2011)................... 19

*Foley v. Interactive Data Corp.*,

  47 Cal. 3d 654 (1988) .............................................................................. 12

*Foster v. Wilson*,

  504 F.3d 1046 (9th Cir. 2007) ................................................................. 2

*Freeman & Mills, Inc. v. Belcher Oil Co.*,

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

11 Cal. 4th 85 (1985) ........................................................................................ 12

*Gaiardo v. Ethyl Corp.*,

835 F.2d 479 (3rd Cir. 1987) ............................................................................ 2

*Garcia v. Ocwen Loan Serv., LLC*,

No. C 10-0290 PVT, 2010 WL 1881098 (N.D.Cal. May 10, 2010) ...................... 20

*Gregory v. Albertsons, Inc.*,

104 Cal.App.4th 853 (2002) ........................................................................... 18

*Hulse v. Oswen Fed. Bank, FSB*,

195 F. Supp. 2d 1188 (D.Or. 2002) ................................................................. 22

*In re Ameriquest Mortgage Co. Lending Practices Litigation*,

No. 05-7097, 2008 WL 5100909 (N.D. Ill. Dec 2, 2008) ................................... 5

*Karlsen v. American Savings & Loan Assn.*,

15 Cal. App. 3d 112 (1971) ............................................................................. 3

*Kiobel v. Millson*,

592 F.3d 78 (2nd Cir. 2010) ............................................................................ 2

*Mabry v. Superior Court*,

185 Cal.App.4th 208 (2010) ............................................................... 8, 9, 10, 20

*Marques v. Wells Fargo Home Mortgage, Inc.*,

No. 09-cn-1985 –L(RBB) 2010 WL 3212131 (S.D.Cal. Aug. 12, 2010) ............... 11

*McBride v. Boughton*,

123 Cal. App. 4th 379 (2004) ......................................................................... 21

*Operating Engineers Pension Trust v. A–C Co.*,

859 F.2d 1336 (9th Cir. 1988) ......................................................................... 2

*People v. Casa Blanca Convalescent Homes Inc.*,

195 Cal. App. 3d 509 (1984) ..................................................................... 16, 18

*People v. Superior Court*,

9 Cal.3d 283 (1973) ...................................................................................... 15

*Perez v. 222 Sutter St. Partners*,

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

222 Cal. App. 3d 938 (1990) ............................................................................ 4

*Petropoulous v. Department of Real Estate,*

 142 Cal. App. 4th 554 (2006) ...................................................................... 8

*Puentes v. Wells Fargo Home Mortgage, Inc.,*

 160 Cal. App. 4th 638 (2008) .................................................................... 17

*Quelimane Co. Inc. v. Stewart Title Guar, Co.,*

 19 Cal. 4th 26 (1998) .................................................................................. 15

*Saunders v. Superior Court,*

 27 Cal. App. 4th 832 (1994) ................................................................ 15, 18

*Skov v. U.S. Bank Nat. Ass'n,*

 No. CV153635, 2012 WL 2054996 (June 8, 2012)................................. 7, 8

*Teselle v. McLoughlin,*

 173 Cal. App. 4th 156 (2009) .................................................................... 22

*Truestone, Inc. v. Simi West Industrial Park II,*

 163 Cal. App. 3d 724 (1984) ...................................................................... 21

*Velazquez v. GMAC,* ....................................................................................

 605 F. Supp. 1049 (2008) ............................................................................ 5

*Weitzenkorn v. Lesser,*

 40 Cal. 2d 778 (1953) ................................................................................. 21


**STATUTES**

15 U.S.C. § 1692a(6)(F) ................................................................................ 25

15 U.S.C. § 43 ............................................................................................... 19

Cal. Civ. Code § 1572.................................................................................... 18

Cal. Civ. Code § 1710.................................................................................... 18

Cal. Civ. Code § 1920.................................................................................... 21

Cal. Civ. Code § 1921.................................................................................... 21

Cal. Civ. Code § 2923.5 ..................................................................... 9, 10, 11

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

## RULES

Fed. R. Civ. P. 65 ............................................................................................................. 22

Fed. R. Civ. P. 11 ........................................................................................................ 2, 3

Fed. R. Civ. P. 9 ............................................................................................................... 7

## REGULATIONS

12 C.F.R. 34.4(b)(6) ......................................................................................................... 8

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff filed a Complaint against Defendants on February 24, 2012 for among other things, fraud in the origination of the loan, unfair business practices, negligence, and violation of Civil Code section 2923.5.  Defendants filed a Motion to Dismiss on April 5, 2012, to which Plaintiff carefully considered every allegation in Defendants Motion and responded by filing a Frist Amended Complaint ("FAC").  Defendants proceeded to file another Motion to Dismiss on May 5, 2012, compound it with a notice of Motion for Sanctions on May 24, 2012, and then file the Motion for Sanctions on June 20, 2012.  Plaintiffs have since opposed the Motion to Dismiss on June 1, 2012, which is still pending.

## II.   STATEMENT OF FACTS

Plaintiff is the owner of the real property, his home, located at 1899 Bramblewood Dr., Fairfield, CA 94534 (hereinafter referred to as "Subject Property"). (FAC ¶ 24.)   In 2005, Plaintiff obtained an adjustable rate mortgage for the principal sum of $445,340.00 from NEW CENTURY MORTGAGE CORPORATION ("NEW CENTURY") secured by a deed of trust. (FAC ¶ 25.)  The deed of trust was recorded against the Subject Property on or about April 19, 2005, as instrument no. 2005-00066121.  (FAC ¶ 25.)

In or about March 2005, Plaintiff was solicited for the purchase loan of the Subject Property.  (FAC ¶ 26.)  Plaintiff specifically requested a 30 year mortgage and it was represented to him that he would be able to obtain such a product.  (FAC ¶ 27.)  During the loan process, Plaintiff was not requested to provide documentation to verify his income because he was receiving a stated income loan.  (FAC ¶¶ 29, 33.)  It was not disclosed to Plaintiff, among other things, that his monthly payment would increase and the principal of his loan would increase. (FAC ¶¶ 38-39.)

Plaintiff has since sought a permanent loan modification on several occasions. Notwithstanding promises and executed agreements, Plaintiff has not been able to obtain a permanent loan modification.  (FAC ¶ 41-45.)  Defendants have now commenced foreclosure proceedings on Plaintiff's property.  (FAC ¶ 46.)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS

### III. ARGUMENT

**A.**   **SANCTIONS AGAINST PLAINTIFF'S COUNSEL ARE NOT WARRANTED UNDER FRCP 11.**

As a result of the potentially chilling effect on innovative lawyering, sanctions are reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A–C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (emphasis added). "Rule 11 sanctions do not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains well grounded in fact." *Kiobel v. Millson*, 592 F.3d 78, 83 (2nd Cir. 2010). Courts avoid drawing on the "wisdom of hindsight" in determining the sufficiency of pre-filing investigation. *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.*, 999 F.2d 745, 752 (3rd Cir. 1993). The reasonableness of the inquiry is determined at the time the pleading or paper was filed, presented, or later advocated. *Id.* The motion must describe the specific conduct alleged to violate Rule 11. FRCP 11(c)(2); see *Foster v. Wilson*, 504 F.3d 1046, 1053 (9th Cir. 2007).

Threats of Rule 11 sanctions are out of line where the other side's position is plausible (even if it is incorrect). *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3rd Cir. 1987). Seeking sanctions under such circumstances is itself sanctionable conduct: "The use of Rule 11 . . . has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. *Id.* Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct." *Id.*

Further, the purpose of Rule 11 sanctions is to deter sanctionable conduct, rather than to compensate for it. Therefore, monetary sanctions may be ordered paid into court as a penalty, rather than awarded to the opposing party. FRCP 11(c)(4).

Plaintiff filed his complaint on February 24, 2012. Defendants responded by filing a Motion to Dismiss on April 4, 2012, to which Plaintiffs filed a First Amended Complaint ("FAC") on April 26, 2012 in consideration of. Defendants responded by filing a Motion to Dismiss Plaintiff's FAC on May 11, 2012. On June 1, 2012, Plaintiff filed an Opposition to

Defendant's Motion to Dismiss, which is pending.  On June 20, 2012, Defendants filed their Motion for Sanctions.

Plaintiff filed his Complaint and then FAC stating causes of action that all contain a proper factual foundation.  Defendants have reproduced their Motion to Dismiss as a Motion for Sanctions in which they have regurgitated the same arguments in an attempt to harass Plaintiff, discourage Plaintiff from pursuing litigation against Defendants' for their wrongful actions, and needlessly increase the costs of litigation.  See FRCP Rule 11(b).  Plaintiff addressed Defendants' contentions, concerns, and/or confusion in filing his FAC, but Defendant nevertheless responded with a Motion to Dismiss and now a Motion for Sanctions, which is duplicative and an apparent strategic intimidation tactic, as evidence by the seemingly form letter for Rule 11 Motion for Sanctions.

Defendants should be cautioned against and/or sanctioned for this attempted hardball technique employed through the aforementioned Notice of and then Motion for Sanctions.  In the alternative, Defendant's Motion for Sanctions should be denied.

**B.**     **PLAINTIFF STATED VALID CLAIMS.**

    **1.**     **Plaintiff is Not Required to Allege Tender.**

A mortgagor who seeks to set aside a voidable sale must make a valid tender of payment of indebtedness.  *Karlsen v. American Savings & Loan Assn.*, 15 Cal. App. 3d 112, 117 (1971).  Thereby, Defendants contend that Plaintiff is required to provide tender, allege that Plaintiff is incapable of performing tender, and thus the entire FAC is barred by the tender rule.

However, there are recognized exceptions to the tender requirement.  Tender may not be required where the action attacks the validity of the underlying debt, since it would constitute an affirmation of the debt.  *Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997).  Plaintiff's first claim alleges this loan was procured by fraud.  Plaintiff alleges numerous instances of misrepresentation and concealment in the origination of Plaintiff's loan, as discussed in section III.B.2.b., *infra.*  Plaintiff's fraud claim attacks the validity of the underlying debt.  In addition, Plaintiff's claims for Defendants' breach of Business and Professions Code sections 17200, et seq. and unfair and deceptive business practices also attack the validity of the underlying debt.

As such, alleging tender would constitute an affirmation of the debt, and invalidate Plaintiff's allegations in his complaint.  (FAC ¶ 21.)

In addition, there is a general equitable exception that "tender may not be required where it would be inequitable to do so."  *Onofrio*, 55 Cal. App. 4th at 424 (quoting 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust & Mortgages § 9:154, p. 508-509, fn. 86.)  Tender may not be required if it would evident injustice and hardship of the right to attack the sale if it were made dependent upon an offer to pay the whole debt.  *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911).  The court in *Onofrio* did not require the plaintiff to tender the amount necessary to cure the default in support of plaintiff's claims for wrongful foreclosure proceedings.  *Onofrio*, 55 Cal. App. 4th at 424.  The court granted the plaintiff's claim for rescission without an offer of tender.  *Id.*  Similarly here, Plaintiff's suit is based upon wrongful foreclosure proceedings and includes a claim for rescission.  Plaintiff's claims stem from a loan that arose from fraud, a loan that because of this fraud he could not then not afford.  Defendants charged penalties upon this loan and then attempted to foreclosure in violation of California law. It would be an injustice and hardship to thereby require Plaintiff to tender the full loan amount of that loan in order to attack the sale.  In addition, some of Plaintiff's causes of action specifically do not require tender. See *Mabry v. Superior Court*, 185 Cal.App.4th 208 (2010).  Therefore, Plaintiff should not be required to allege tender.

**2.     Plaintiff Stated a Fraud Claim.**

**a.     Defendants are Successors in Interest.**

Successor in interest is defined as "[o]ne who follows another in ownership or control of property."  *Perez v. 222 Sutter St. Partners*, 222 Cal. App. 3d 938, 948 (1990).  Defendants contend that since they did not originate the subject loan they are not liable to Plaintiff for events that occurred in the origination of the loan.  Plaintiff's loan was procured by fraud, by a scheme and process of nondisclosures that was of no fault of Plaintiff.  Defendants admittedly entered into an assignment of servicing agreements and transfer of the loan from NEW CENTURY and had full access to the loan documentation, including origination documentation showing improper processes and procedures that occurred.

This matter is similar to *Velazquez v. GMAC*, 605 F. Supp. 1049 (2008). In *Velasquez*, GMAC Mortgage Corp. purchased the plaintiff's loan from Aegis. The United States District Court in the Central District of California found that by purchasing the plaintiff's loan, GMAC had sufficient information available in order to deny GMAC's Motion to Dismiss Plaintiff's fraud cause of action. *Id.*

Successor in interest liability is extremely fact sensitive. William P. O'Neill, *Advanced Issues in Strategic Alliances*, 1193 PLI/Corp. 352, 391 (July 2000). (FAC ¶ 54.) While specific acts and omissions referenced in the FAC were committed by NEW CENTURY MORTGAGE ("NEW CENTURY"), liability is imputed on DEUTSCHE as its successor in interest and holder in due course. (FAC ¶ 6.) As in *Velasquez*, DEUTSCHE had sufficient information available in order for this Court to deny DEUTSCHE's Motion to Dismiss.

DEUTSCHE readily admits in its opposition that it has beneficial interest in Plaintiff's Loan as the result of a purported assignment (RJN, Exhibit 4). (Motion For Sanctions 7:22.) The purported transfers, assignments, and substitutions of Plaintiff's loan were only recently discovered by him because of the likely inadvertent failure of Defendants to notify Plaintiff. Because of the complexity involved in ascertaining the nature and effect of these transfers, it would be premature to dismiss Plaintiff's claims until further discovery can be performed.

Putting aside the non-binding, out of state case law of *In re Ameriquest Mortgage Co. Lending Practices Litigation*, No. 05-7097, 2008 WL 5100909 (N.D. Ill. Dec 2, 2008) cited by Defendants, the case failed to assign liability because of among other things, the Illinois Consumer Fraud and Deceptive Business Practices Act. At *3. In addition, the court did not assign liability to the servicer because of a contradiction in the pleadings. *Id.* at *2, fn 2. Defendants state no such contention in their Motion.

Therefore Plaintiff has sufficiently pled enough facts to show Defendants are liable for Plaintiff's claim, or at least to allow Plaintiff sufficient time to conduct discovery to gain access to the appropriate evidence to plead and prove such allegations.

///

///

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

### b.      Plaintiff's Fraud Claim is Sufficiently Pled

"Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir.1996) quoting *Bank of the West v. Valley Nat'l Bank of Ariz.,* 41 F.3d 471, 477 (9th Cir.1994), quoting *Hackethal v. Nat'l Cas. Co.,* 189 Cal. App. 3d 1102 (1987)).   Under Rule 9 of the Federal Rules of Civil Procedure, a party must state the circumstances constituting the fraud with particularity.   Less specificity is required when it appears from the allegations that the defendant possesses full information concerning the facts of the controversy.   *Committee on Children's Television, Inc. v. General Foods Corps.*, 35 Cal.3d 197, 217 (1983).

Defendants contend that Plaintiff's fraud claim fails for a lack of specificity.   However, Plaintiff alleged that Plaintiff was solicited by someone from Pan American Funding Group, an Agent of New Century ("Agent"), regarding the purchase loan of the subject property.   (FAC ¶ 27.)   Plaintiff requested a 30 year fixed loan and Agent represented that Plaintiff would receive as such.   (FAC ¶ 27.)   Agent did not ask Plaintiff his income, did not request that Plaintiff provide documentation of his income, such as paystubs or tax returns, and did not ask what his expenses were.   (FAC ¶¶ 29-30.)

In addition, though the terms of the loan clearly stated that the yearly interest rate was 6.8%, it was very unclear that the interest rate would change after two (2) years, and that the interest rate would change every six months thereafter.   (FAC ¶ 85.)   Defendants' representations were further perpetuated by the loan documents which stated that the interest rate, payment amounts, and negative amortization may occur, but because of the margin and current index, the interest rate was certain to increase and as a result the monthly payment change, and negative amortization was certain to occur.   (FAC ¶ 86.)   The loan documents were not provided to Plaintiff until weeks after the loan transaction was entered into, signed, recorded, and completed. (FAC ¶ 158.)

/ / /

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

In *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 249 (2011), the court determined that even though the concealed or suppressed material facts could be distilled through careful analysis of the note and payment schedule, the plaintiffs adequately pled that material facts were concealed by inaccurate representations and half-truths.  If plaintiffs could show that defendant intentionally used its Option ARM forms to deceive borrowers, the plaintiffs may be able to establish a fraud claim.  *Id.*  As in *Boschma,* Plaintiffs' claim should survive the pleading stage as Plaintiffs have properly alleged that Defendants' inaccurate representations, intentional misrepresentations, and half-truths of material facts were concealed to intentionally deceive Plaintiffs

### c.     Plaintiff's Fraud Claim is Timely

"[W]here a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered . . . .'"  *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

Defendants contend that Plaintiff's fraud claim is time-barred because the loan originated on April 19, 2005 and Plaintiffs filed their claim on February 24, 2012, thus exceeding the three-year statutory bar.  Cal. Code Civ. Proc. § 338(d).  However, as conspicuously stated in the FAC, Plaintiff was only able to reasonably discover Defendant's unlawful suppression of facts and intentional acts of deception when Plaintiff reviewed his loan documents when Plaintiff was denied for loan modifications and subsequently sought legal action against Defendants in or about November 2011.

As stated in III.B.2.b, *supra*, the origination of the loan occurred amidst layers of misrepresentations that were furthered within the loan documents themselves.  Concealment was then furthered by Defendants' failure to provide Plaintiff with the loan documents prior to or at the time of signing, not until weeks after the loan transaction was completed.  (FAC ¶ 158.)

### 3.     Plaintiff Has Stated a Section 2923.5 Claim.

### a.     Plaintiff's Claim is Not Pre-Empted by Federal Law.

Defendant contends that section 2923.5 is preempted by federal law, specifically the National Banking Act ("NBA") and Home Owners' Loan Act ("HOLA").  The NBA vests

national banks with the authority to exercise all incidental powers necessary to carry on the business of banking.  *Skov v. U.S. Bank Nat. Ass'n*, No. CV153635, 2012 WL 2054996 at *8 (June 8, 2012); see 12 U.S.C. § 371(a).  The Office of the Comptroller of Currency ("OCC") has the authority to promulgate the incidental powers of national banks and does so in 12 Code of Federal Regulations section 34.4(a).  *Skov*, 2012 WL 2054996 at *8.  As stated in the Code, the acquisition and transfer of real property is not inconsistent with real estate lending powers and only incidentally affects the exercise of their lending powers.  *Id.;* see 12 C.F.R. § 34.4(b)(6).  Thus section 2923.5 is not preempted by the NBA.

Regarding HOLA, the court in *Mabry v. Superior Court*, 185 Cal.App.4th 208 (2010) stated that the Supreme Court in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541-42 (1993) noted that foreclosure is a matter of real estate property law and real property law has traditionally been the exclusive domain of the states.  *Mabry*, 185 Cal. App. 4th at 230.  It is logical to conclude that if foreclosure was intended to be within the preempted category of loan servicing it would have been explicit.  *Id.* at 230-31.  Further, Civil Code section 2923.5 has been construed narrowly "to avoid crossing the line from state foreclosure law into federally preempted loan servicing."  *Id.* at 231.  Thus, as long as relief under section 2923.5 is limited to just postponement it is not preempted by federal law.  *Id.* at 226.  The court in *Mabry* centered its discussion on the preemption of section 2923.5 by HOLA.  Thus, Plaintiff's section 2923.5 claim is not preempted by the HOLA.

### b.       Section 2923.5 Contains a Private Right of Action.

A private right of action may inhere within a statute when it is necessary to achieve the statute's objectives.  *Cannon v. University of Chicago*, 441 U.S. 677, 683 (1979).  California courts do not favor constructions of statues that render them advisory or dead letter. *Petropoulous v. Department of Real Estate* 142 Cal. App. 4th 554, 567 (2006).  While there is no express provision for private enforcement of section 2923.5, the structure of 2923.5 is inherently individual, as it would become meaningless dead letter if there was no individual enforcement. *Mabry*, 185 Cal. App. 4th at 219.  In addition, section 2923.5 was enacted as an urgency measure when section 2924g was already at hand and thus reading the statues together and allowing a

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

remedy of postponement produces a logical and natural interpretation.  *Id.*  Therefore, there is a private right of action under section 2923.5.

c.      **Defendants are in Violation of the Statute.**

Courts have determined that "section 2923.5 operates substantively on lenders. [1]  They *must* do things in order to comply with the law."  *Mabry v. Superior Court*, 185 Cal. App. 4th at 221.  "The key text of section 2923.5—'key' because of the substantive obligation it imposes on lenders—basically says that a lender cannot file a notice of default until the lender has contacted the borrower . . . to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.'"  *Id.*  The lender may not file a notice of default until 30 days after this contact and good faith discussion has taken place.  Cal. Civ. Code § 2923.5(a)(1).

On or about October 26, 2009, Defendants had a Notice of Default recorded on the Subject Property. Plaintiff alleged in the FAC that (1) Defendants did not send Plaintiff a first class letter than included a toll-free number for HUD, (2) Defendants did not attempt to contact Plaintiff by telephone at least three times, at three hours, and on different days prior to filing a Notice of Default, and (3) Defendants did not send a certified letter to Plaintiff with return receipt requested.  (FAC ¶¶ 105-108.)  Thus, Defendants initiated this foreclosure proceeding without first contacting Plaintiff, as was their duty pursuant to Civil Code section 2923.5.  (FAC ¶ 108.)

Defendants boldly contend their statutory obligations are met because Plaintiff had a trial HAMP loan modification, as well as a forbearance plan.  Contrary to Defendants' contentions this does not meet their statutory obligations.  Any and all contact between Plaintiff and Defendants was initiated by Plaintiff.  The trial period plan and forbearance plan offered as evidence of Defendants' compliance with Civ. Code section 2923.5 were (1) only in response to

---

[1] Civil Code § 2923.5 provides that **the lender shall contact the borrower** (1) by a first class letter that includes a toll-free number for HUD to allow the borrower to find a HUD-certified counseling agency, (2) after the letter is sent **the lender shall attempt to contact the borrower** at least three times, at three different hours, and on three different days, (3) **attempt to contact the borrower** with an automated system that connects borrowers to a live representative, (4) **send a certified letter to the borrower** with return receipt requested if the borrower does not respond within two weeks after the telephonic requirements, (5) **provide a means for the borrower to contact the lender** in a timely manner, and (6) post a prominent link on the homepage of the internet website (emphasis added) Cal. Civ. Code §§ 2923.5 & 2923.5 (g)(1)(2)(A)(B)(3)(3)(4)(5).

9

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

contact initiated by Plaintiff; and (2) not offered until after the Notice of Default was recorded on October 29, 2009 and November 3, 2010 respectively. In addition, these by no means are conclusive as to Defendants inquiring into why Plaintiff could not make his payments and informing Plaintiff of traditional ways to avoid foreclosure as offered as such by Defendants. The legislature articulated the statue as "until the lender has contacted the borrower," rather than until the lender and borrower have conferred as offered by Defendant. *Mabry,* 185 Cal. App. 4th at 221.

Whether a defendant has complied with a statute is a question of fact. See *Daum v. SpineCare Medical Group, Inc.* 52 Cal. App. 4th 1285, 1306 (1997). As stated in Skov, whether the lender has complied with section 2923.5 in contacting the plaintiff as it asserts, assuming the truth of the plaintiff's allegations, which cannot be resolved upon a motion to dismiss, or in a motion for sanctions. *Skov,* 2012 WL 2054996 at *5. Therefore, Plaintiff stated a claim for violation of section 2923.5.

### 4.     Plaintiff Stated a Claim Under HAMP as a Third Party Beneficiary.

#### a.     Plaintiff Stated a Claim for Breach of Contract.

On or about April 24, 2009, CARRINGTON entered into a Commitment to Purchase Financial Instrument and Service Participation Agreement ("SPA") for the Home Affordable Modification Program under the Economic Stabilization Act of 2008 with Federal National Mortgage Association ("Fannie Mae") and agreed to perform certain loan modification and foreclosure prevention services for eligible loans. The Agreement was entered into between Defendant and Fannie Mae in its capacity as a financial agent of the United States.

Federal law controls the interpretation of a contract entered into pursuant to federal law and to which the United States is a party. *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1243 (9th Cir. 2009). In addition, in ¶11(A) of the SPA it states: "The Agreement shall be governed by and construed under Federal law and not the law of any state or locality, without reference to or application of the conflicts of law principles."

Under federal common law an intended beneficiary may enforce a contract as a third party beneficiary. *Id.* at 1244. The third party must show that the contract reflects the express or

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

implied intentions of the parties to the contract to benefit the third party.  *Id*.  Pursuant to ¶2 (A-B) of the SPA Agreement:

> Servicer shall perform the Services for all mortgage loans it services, whether it services such mortgage loans for its own account or for the account of another party, including any holders of mortgage-backed securities . . . Servicer shall use reasonable efforts to remove all prohibitions or impediments to its authority, and use reasonable efforts to obtain all third party consents, waivers and delegations that are required, by contract or law, in order to perform the Services.

"Upon a fair reading of the Agreement in its entirety and in the context of its enabling legislation, it is difficult to discern any substantial purpose other than to provide loan modification services to eligible borrowers."  *Marques v. Wells Fargo Home Mortgage, Inc*., No. 09-cn-1985 –L(RBB) 2010 WL 3212131 (S.D.Cal. Aug. 12, 2010).  Further, "[t]he Agreement on its face expresses a clear intent to directly benefit the eligible borrowers."  *Id*.  The court in Marques determined that the plaintiff could state a claim against the defendant lender as an intended beneficiary under the SPA Agreement.  *Id*. at 7.  Thus, Plaintiff should be considered a third party beneficiary of the SPA agreement.

Pursuant to the SPA and HAMP, Defendant agreed to suspend foreclosure proceedings until the HAMP analysis is complete for all homeowners.  (FAC ¶ 131.)  Defendant breached the agreement when it pursued foreclosure while reviewing Plaintiff for a HAMP modification.  (FAC ¶ 134.)  In addition, under the SPA and HAMP, Defendant agreed to offer a three (3) month HAMP Trial Period at a payment level of 31 percent of income to all borrowers who met the HAMP criteria and pass the NPV test.  (FAC ¶ 135.)  Defendant breached the agreement by not offering Plaintiff a HAMP Trial Period at a payment level of 31 percent of his income, or in the alternative not informing Plaintiff that his loan was evaluated under the HAMP criteria and proper reasons that Plaintiff's loan did not meet the HAMP criteria or did not pass the NPV test.  (FAC ¶ 135.)

In addition, in or about October 29, 2009, Plaintiff was offered a HAMP trial period plan in which under the terms of the plan if Plaintiff and Defendant executed the Agreement and Plaintiff made timely payments during the modification period, Plaintiff would then receive a modified payment beginning on March 1, 2010.  (FAC ¶¶ 123-24.)  Plaintiff made timely

payments under the trial plan, but CARRINGTON failed to provide a modified payment as required by the terms of the agreement.   Thus, DEFENDANT breached the terms of the agreement.   Therefore, Plaintiff stated a claim for breach of contract.

### b.     Plaintiff Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Defendants contend that a breach of the Covenant of Good Faith and Fair Dealing does not permit tort damages outside of the insurance context.  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 682-700 (1988).   *Foley* however, specifically limits its holding, stating "[t]ort remedies are not available for breach of the implied covenant in an employment contract . . . ." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 700 (1988).  Other courts, including in *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371 (1990), have recognized that ". . . the Foley court did limit its holding to the employer-employee relationships . . . ." *Id.* at 1398.  Tort recovery for breach of the implied covenant is not absolutely limited solely to the insurance context as Defendant asserts, See *Freeman & Mills, Inc. v. Belcher Oil Co.,* 11 Cal. 4th 85, 102 (1985), and to suggest that because Plaintiff and Defendants are not insurer and insured not only precludes Plaintiff from recovery, but is grounds for sanctions is far reaching.  Actions for breach of the implied covenant of good faith and fair dealing have been maintained in the context of the lender's breach in the loan modification process.  *Auerbach v. Great Western Bank*, 74 Cal. App. 4th 1172, 1183-84 (1999).

Plaintiff began seeking to obtain loan assistance from Defendants since October 2009. (FAC ¶ 141.)  Defendants told Plaintiff that they would not be able to offer any loan workout options at that time because Plaintiff was current on his loan and Defendants actively encouraged Plaintiff to become delinquent on his mortgage in order to become eligible for loan modification assistance.  (FAC ¶¶ 141-42.)  Plaintiff followed and relied on Defendants' instructions and became delinquent on his loan.  (FAC ¶ 142.)

Plaintiff then retained the services of a third party company to assist him in obtaining a loan modification.  Though Plaintiff was offered a trial payment plan, he was never offered a permanent modification as stated in the terms of the trial modification agreement, despite having

made timely payments and fulfilling all his obligations pursuant to the trial plan.  (FAC ¶ 145.)  Defendants never provided Plaintiff with a clear reason for his denial for a permanent modification.  (FAC ¶ 146.)

In total, Plaintiff applied for a loan modification under HAMP on several occasions.  (FAC ¶147.)   Though Defendants eventually entertained Plaintiff's modification attempts, Defendants approached the modification process in a disingenuous manner.  Plaintiff complied with Defendant's requests during the modification process, yet found himself continuously attempting to contact Defendants to find the status of his modification applications, which always resulted in a denial.  (FAC ¶ 147.)  Defendants thwarted Plaintiff's loan modification attempts through organizationally devised tactics devised to deny Plaintiff's legitimate loan modification requests, including claiming Plaintiff did not comply with Defendant's request to provide documentation when in fact Plaintiff had, and transferring Plaintiff to different departments in order to avoid Plaintiff's inquiries.  (FAC ¶ 148.)  Defendants instituted a notice of trustee's sale despite assurances to Plaintiff that they would stay foreclosure proceedings while Plaintiff was in review for a loan modification.  (FAC ¶ 150.)  Plaintiff's intended benefit of owning the Subject Property was injured through Defendants' willful, knowing, malicious, fraudulent and oppressive actions.  (FAC ¶ 94.)  Therefore, Plaintiff stated a claim for breach of the implied covenant.

**5.      Plaintiff's Fifth Claim for Violation of TILA and Sixth Claim for Rescission are Sufficient.**

**a.      Plaintiff's Claim for Violation of TILA is Timely Because the Statute of Limitations is Tolled.**

The Truth In Lending Act requires certain disclosures be given to a borrower in a loan transaction.  15 U.S.C. § 1601 et seq.  If the borrower receives false or incomplete disclosures, the borrower has a right to rescind, which right is extended for a period of three years.  *Id.*  Fraudulent concealment of the required disclosures operates to toll the statute of limitations where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part."  *Holmberg v. Armbrecht*, supra, 327 U.S. at 397.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

Defendants contend that Plaintiff cannot maintain a claim for violation of TILA because the statute of limitations has expired. Defendants violated TILA by failing to provide Plaintiff with accurate disclosures required under TILA regarding adjustable rate mortgages and negative amortization mortgages and advising him of similar loan products. (FAC ¶ 156.) In addition, prior to the loan Defendants failed to inform Plaintiff that he was entering into a loan in which the interest rate on the loan would increase, the amount of the monthly payment would dramatically increase and Plaintiff qualified for the loan based on fraudulent documentation. (FAC ¶ 157.) Further, Defendants failed to provide Plaintiff with the loan documents until weeks after the loan transaction was completed. (FAC ¶ 158.) Plaintiff did not discover the material omissions until Plaintiff began the loan modification process within the last three years. (FAC ¶ 96.) Plaintiff did not discover the fraudulent facts, including his income overstatement, used to qualify him for the loan until Plaintiff reviewed the original loan documents in the past few months in preparing a loan modification application. (FAC ¶ 96.) Therefore, Plaintiff's TILA claim has been brought within the one year statute of limitations for damages and the three year statute of limitations for rescission.

> **b.** **Plaintiff's Claim for Rescission is Not Based Solely on Defendants' Violation of TILA.**

Defendants contend that Plaintiff is unable to make a claim for rescission because his TILA claim fails and for a failure to allege tender. However, Plaintiff's claim for rescission is not solely based on a violation of TILA, but for failure to provide proper disclosures, intentional fraudulent acts, fraudulent concealment, and public policy grounds, each of which provides independent grounds for relief. (FAC ¶ 168.) Initial disclosures were not provide to Plaintiff and there was a lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan the he could not afford and would ultimately benefit Defendants. (FAC ¶ 170.) Defendants' intentional fraudulent acts included overstating Plaintiff's income without his knowledge, and understating Plaintiff's assets. (FAC ¶ 171.) Defendants then proceeded to conceal the details of the loan as stated in III.B.2.b, *supra*.

/ / /

In addition, Defendant contends that Plaintiff's rescission claim fails for failure to restore the amount of indebtedness to Defendants.  As stated in III.B.1, *supra*, Plaintiff is not required to allege tender.  Therefore, Plaintiff has stated a claim for rescission.

**6.      Plaintiffs Stated a Claim for Violation of Business and Professions Code sections 17200, et seq.**

Unfair Competition Law ("UCL") defines "unfair competition" to include "any unlawful, unfair, or fraudulent business act or practice."  *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Fact specific or particularized pleading is not required to state a section 17200 claim.  *Quelimane Co. Inc. v. Stewart Title Guar. Co.* 19 Cal. 4th 26, 47 (1998).  In addition, "a plaintiff need not plead the exact language of every deceptive statement; it is sufficient for plaintiff to describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme.  *Committee on Children's Television, Inc. v. General Foods Corp.* 35 Cal. 3d 197, 212-13 (1983).  The California Supreme Court has held that a court in equity "may exercise the full range of inherent powers in order to accomplish complete justice between the parties, restoring if necessary the status quo ante as nearly as may be achieved."  *People v. Superior Court*, 9 Cal.3d 283, 286 (1973).

Defendants contend that the FAC does not distinguish between the named defendants with respect to the conduct alleged and because there is no vicarious liability under section 17200 (*Emery v. Visa Internat, Service Ass'n* 95 Cal. App. 4th 952,960 (2002)) the claim fails on its face for not particularly alleging which defendant is liable for which conduct.  *Emery* is based on an individual that brought an action as a private attorney general against a credit card company for false advertising.  *Id.* at 956.  Plaintiff's claim for violation of section 17200 failed because the defendant had no relationship with the merchants that prepared and distributed the solicitations.  *Id.* at 960.  *Emery* does not translate here, where there is no dispute that a relationship existed between Plaintiff and the named defendants.

///

///

///

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

### a.    Plaintiff Adequatley Pled Defendants' Actions were Unlawful.

UCL incorporates other laws and treats violations of them as unlawful practices independently actionable; a violation of almost any law may serve as a basis for a UCL claim. *Saunders v. Superior Court,* 27 Cal. App. 4th 832, 838-39 (1994).

Defendants instructed Plaintiff that he could afford the loan since the interest rate would be much lower.  (FAC ¶ 35.)  However, Plaintiff was not explained the contents of the package nor given the opportunity to read the loan documentation prior to the date of signing.  (FAC ¶¶ 38-39.)  Defendants made partial conditional representations about the negative amortization component of the loan, namely that it was guaranteed to occur.  (FAC ¶ 182.)  Defendants failed to disclose that (1) the promised interest rate was only fixed for the first two years, (2) the payment amount for the first two years identified in the TILDS and in the contract was insufficient to pay both principal and interest, (3) Plaintiff would have to pay amounts far higher than those listed in the TILDS and the contract to avoid negative amortization, and (4) loss of equity and/or loss of Plaintiff's subject property was certain to occur if Plaintiff adhered to the payment schedules provided by Defendants.  (FAC ¶ 183.)  The preceding acts constitute Actual Fraud (Civ. Code § 1572), Constructive Fraud (Civ. Code § 1573), and Deceit (Civ. Code § 1710) in violation of the applicable statutes, in addition to Defendant CARRINGTON's violation of Civ. Code § 2923.5, thus making Defendants' acts unlawful and a basis for a §§17200, et seq. violation.  (FAC ¶ 181.)  Therefore, Plaintiff has stated that Defendants' acts were unlawful.

### b.    Plaintiffs Pled Defendants' Actions were Unfair.

"[A]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to the consumer."  *People v. Casa Blanca Convalescent Homes Inc.,* 195 Cal. App. 3d 509, 530 (1984).   Section 5 of the Federal Trade Commission Act prohibits "unfair methods of competition in commerce."  *See* 15 U.S.C. § 43(a).  The FTC requires the consumer injury to be substantial, the complained-of-practice must not be outweighed by any countervailing benefits to consumers or competition, or the injury must be one that consumers themselves could not

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

have reasonably avoided.  *See Am. Fin. Serv. Ass'n v. F.T.C.*, 767 F.2d 957, 971 (D.C. Cir. 1985).

Defendants' omissions and misconduct constituted tortious conduct that gave Defendants an unfair competitive advantage over their competitors that did not engage in such practices.  (FAC ¶ 184.)  Defendants intended that Plaintiff would be misled.  (FAC ¶ 186.)  Such conduct violated established law and/or public policies which seek to promote the informed use of credit through full and complete disclosures.  (FAC ¶ 184.)  The harm to Plaintiff outweighs any utility that Defendants' acts might have.  (FAC ¶ 185.)  Therefore, Plaintiff stated that Defendants' actions were unfair.

### c.    Plaintiffs Pled Defendants' Actions were Fraudulent.

The fraudulent prong in UCL prohibits any activity that is likely to deceive members of the public.  *Puentes v. Wells Fargo Home Mortgage, Inc.,* 160 Cal. App. 4th 638, 645 (2008).  Defendants lured Plaintiff into the loan with promises that he could afford the monthly payment, focusing on the low interest rate.  (FAC ¶ 193.)  The loan contains terms whereby Plaintiff can never reasonably repay it.  (FAC ¶ 189.)  The loan was based on fraudulent facts concealed from Plaintiff, as he never saw or read the application.  (FAC ¶ 196.)  Plaintiff is informed and believes that in order for him to qualify for the loan his income was overstated by Defendants.  (FAC ¶ 196.)  This is supported by Plaintiff having never verified the application used by Defendants and Defendants requesting that Plaintiff provide any material financial documentation used to properly qualify him for the loan.  (FAC ¶ 197)  Therefore, Plaintiff stated that Defendants' acts were fraudulent.

Therefore, Plaintiffs stated that Defendants' actions were unlawful, unfair, and fraudulent and thus a violation of California Business and Professions Code sections 17200, et seq.

### 7.    Plaintiff's Eighth Claim for Unfair and Deceptive Business Act Practices is Sufficient.

Defendants contend that Plaintiff's claim for violation of Civil Code sections 1920 and 1921 contain no private right of action.  Plaintiff has not made a separate claim under sections

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

1920 and 1921, but rather has cited Defendants' violations of these code sections as illustrative of unfair and deceptive business acts, cumulative with Defendant's other unfair and deceptive business acts.  Defendants violated Civil Code section 1920 in failing to reasonably consider whether or not Plaintiffs would be able to meet their mortgage obligation.  (FAC ¶ 206.) Defendants violated Civil Code section 1921 in failing to provide Plaintiffs with proper information regarding adjustable rate mortgages at the initial stages of the application process. (FAC ¶ 167.)

Unfair and Deceptive Business Practices support a private right of action for "any practices forbidden by law . . . ." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).  In addition, Plaintiff alleges Defendants treated him unfairly in the loan modification process.  Plaintiff has sought a loan modification on several occasions.  Plaintiff entered into a trial loan modification agreement with Defendants in or about October 2009.  (FAC ¶ 224.) Plaintiff made all payments under the terms of the trial loan modification.  (FAC ¶ 224.)  After all payments were made, Defendants failed to offer Plaintiff a permanent loan modification though it was promised and a term of the trial modification.  (FAC ¶ 225.)  Thereinafter Plaintiff continued to contact Defendants to obtain a permanent loan modification.  (FAC ¶ 226.)  Though CARRINGTON finally offered a forbearance plan in or about November 2010, consisting of a final payment of $20,701.11 and past due amounts were capitalized, it offered little relief if any to Plaintiff.  (FAC ¶ 226.)  This is indicative of Plaintiffs' experience through the loan modification process.  Plaintiff's attempts to obtain a loan modification have all been thwarted by Defendants' tactics to continually deny Plaintiffs, by among other things, claiming Plaintiffs did not comply with Defendants' requests and transferring Plaintiff to different departments in order to avoid Plaintiff's loan modification requests.  (FAC ¶ 227.)  Actions only revealing an intent and purpose of forcing Plaintiff into further late penalties, fees, and charges.

Such practices are immoral, unethical, oppressive, unscrupulous and substantially injurious to the consumer, an unfair and deceptive business act practice.  See *People v. Casa Blanca*, 159 Cal. App. 3d at 530.  Such acts are also directly in violation of recent legislatively declared policy enacted specifically to protect homeowners, and not burden homeowners with

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

tactics afforded to lenders to accumulate increased interest and late charges, fitting directly within the definition of an unfair business practice in *Gregory v. Albertsons, Inc.*, 104 Cal.App.4th 853-54 (2002) (holding the allegedly unfair business practice must be 'tethered' to a legislatively declared policy.)   Therefore, Plaintiff stated a claim for unfair and deceptive business act practices.

Defendants contend that Civil Code sections 1920 and 1921 are preempted by federal law.  Defendants cite *Estillore v. Countrywide Bank FSB*, No. CV F 10-1243 LJO GSA, 201 WL 348832 (E.D. Cal. Feb. 2, 2011), *Gens v. Wachovia Mort. Corp.*, No. 10-CD-01073-LHK, 2011 WL 9121 (N.D. Cal. Jan. 3, 2011), *Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d 895, 911 (C.D. Cal. 2009), and *Esoimem v. Wells Fargo Bank*, No. CIV S-1002259 JAM EFB PS (E.D. Cal. Sept. 1, 2011) in support.   However, in *Estillore* the defendant specifically alleged preemption by the Alternative Mortgage Transactions Parity Act and Defendant makes no allegation that it is applicable.  *Estimllore*, WL 348832 at *16.  In *Gens*, the court determined that Civil Code section 1918.5 was preempted by federal law and no reference to sections 1920 or 1921 was made.  *Gens*, WL 9121 at *9.   In *Garcia*, the defendant specifically alleged preemption by the Home Owners Loan Act and 12 C.F.R. section 560.2(b)(4) and Defendant makes no allegation that either of these is applicable.  *Garcia*, 676 F.Supp.2d 895 at 911.   In *Esoimeme*, the plaintiff's claim was dismissed for failure to allege facts.  Thus, these cases are insufficient to support Defendant's position.   Therefore, Plaintiff has pled sufficient facts to support a claim for Defendants' unfair and deceptive business practices.

### 8.    Plaintiff Stated a Claim for Declaratory Relief.

"In the case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  The purpose of injunctive relief is to preserve the status quo between the parties pending a final determination on the merits of the suit.  Fed. Rules Civ. Proc. 65.  It will be impossible for Plaintiff to obtain adequate relief by way of money damages due to the unique nature of real property.  (FAC ¶ 259.)

/ / /

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

An actual controversy exists as DEUTSCHE AND CARRINGTON have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has not value since the Deed of Trust is wholly unsecured.  (FAC ¶ 237.)  On or about November 1, 2011, Defendants claimed they have a secured enforceable interest in, and perfected lien against, Plaintiff's Note, Deed of Trust and Property.  (FAC ¶ 237.)  Thus the competing allegations made by Plaintiff, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the property.  (FAC ¶ 239.)  Therefore, Plaintiff stated a claim for declaratory relief.

### 9.   Plaintiff Stated a Claim for Negligence Because Defendants Owed Plaintiff a Duty.

[N]egligence involves a legal duty to use care, a breach of such duty, and the breach as the legal cause of the resulting injury.  *United States Liability Ins. Co., v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 594 (1970).  In California, the test to determine whether a financial institution owes a duty of care to a borrower "'involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.'"  *Connor v. Great Western Sav. & Loan Assn.*, 69 Cal.2d 850, 865 (1968) (quoting *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958)).

The loan transaction was intended to provide for Plaintiff owning the Subject Property.  (FAC ¶ 26.)  The harm to Plaintiff as a result of the transaction was foreseeable because the obvious consequence would be for Plaintiff to forfeit his home.  (FAC ¶ 245.)  Plaintiff has suffered injury including, but not limited to, credit damage, potential loss of his home, the economic costs of complying with Defendants' demands for paperwork, and attorney fees.  (FAC ¶ 247.) The connection between Defendants' conduct and the injury suffered stems from Defendants' authority as possessor of the trust deed and note and their corresponding failure to comply with state consumer protection laws, to properly service the loan, and to use consistent

methods to determine modification approvals.  (FAC ¶ 249.)  Finally, a strong public policy exists to stem the wave of foreclosures.  *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 220.  The balancing of factors necessarily favors imposing a duty on Defendants.

In addition, Defendants owed Plaintiff a duty of care not to act negligently in the loan modification process.  *See Garcia v. Ocwen Loan Serv., LLC*, No. C 10-0290 PVT, 2010 WL 1881098 (N.D.Cal. May 10, 2010) at *3 (finding that a lender owed a duty of care to a borrower-client in processing the borrower's loan modification application).  Here, Plaintiff made multiple attempts to obtain a modification beginning in October 2009, having never been contacted by Defendants.  (FAC ¶ 41.)  Plaintiff was told that he did not qualify for any type of assistance because he was current on his loan.  (FAC ¶ 42.)  Plaintiff then retained a third party company to assist him in obtaining loan assistance and though he was eventually approved for a trial modification and fulfilled all the terms and conditions pursuant to it, he did not receive a permanent modification though the terms of the trial dictated that he would.  (FAC ¶ 44.)  Plaintiff was not offered an explanation for his denial.  Plaintiff then received a purported forbearance plan, but the onerous terms, a $20,701.11 payment was completely unaffordable.  Thus, despite Plaintiff's good faith effort, Defendants denied all attempts at modification and dragged Plaintiff through the process with no apparent intention to sincerely engage in the process or assist him. Therefore, Plaintiff stated a claim for negligence.

### 10.    Plaintiff Stated a Claim for Quasi-Contract.

A quasi-contract is a contract imposed by law in various situations in order to prevent an unjust enrichment.  *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953).  Quasi-contracts are not based on the apparent intention of the parties, but are obligations imposed by law for reasons of justice.  *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).  A Quasi-contract is found where one party has accepted and retained a benefit under the circumstances making it inequitable for that party to retain the benefit without paying for its reasonable value.  *Truestone, Inc. v. Simi West Industrial Park II*, 163 Cal. App. 3d 715, 724 (1984).

DEUTSCHE and/or CARRINGTON demanded monthly mortgage payments from Plaintiff and continued to collect payments from Plaintiff, as Plaintiff reasonably relied upon

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

their assertion that it/they are/were entitled to the benefit of Plaintiff's mortgage.  (FAC ¶ 251.)

DEUTSCHE and/or CARRINGTON knowingly accepted payments and retained them, knowing

that they/it did not acquire an interest in Plaintiff's note that would allow them to collect such

payments.   (FAC ¶ 251.)   Thus, it would be inequitable to allow DEUTSCHE and/or

CARRINGTON to retain the payments they/it received from Plaintiff, which it/they did not have

the legal authority to do.  (FAC ¶ 253.)  Therefore, Plaintiff stated a claim for quasi-contract.

### 11.    Plaintiff Stated a Claim for Violation of Fair Debt Collection Practices Act.

Defendants contend that Plaintiff's claim for Violation of Fair Debt Collection Practices

Act ("FDCPA") fails because Plaintiffs failed to allege that Defendants were acting as debt

collectors engaged in the process of collecting debt from Plaintiff.   Defendants conclude that

they are debt collectors within the meaning of the FDCPA.   Defendants cite 15 U.S.C. section

1692a(6)(F), stating that the term does not include "any person collecting or attempting to collect

any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii)

concerns a debt which was not in default at the time it was obtained by such person . . . ."

"The term 'debt collector' means any person . . . who regularly collects or attempts to

collect . . . debts owed or due or asserted to be owed or due another."  Plaintiff claims that

DEUTSCHE, as the purported assignee, and CARRINGTON, as the purported servicer, falsely

represented the status of the debt, including that it was owed to Defendant DEUTSCHE.  Thus

Defendants fall squarely within the statutory definition of "any person collecting or attempting to

collect any debt . . . due another" in that Defendants were not entitled to collect the debt and

attempt to collect the debt due another.  Defendants do not fit within the exception they cite, 15

U.S.C. section 1692a(b)(F), because it applied to debts "not in default at the time it was

obtained" and Plaintiff was in default on his loan in or about October 2009, when he obtained a

trial modification, and the purported transfer to DEUTSCHE did not occur until September 21,

2010.

Defendants also in the alternative contend that they were not engaged in the process of

debt collection because the FDCPA does not apply to collection efforts related to mortgage

loans.  Defendants rely on *Hulse v. Oswen Fed. Bank, FSB,* 195 F. Supp. 2d 1188 (D.Or. 2002).

The court in *Hulse* was reluctant to apply the FDCPA because it construed the plaintiffs' complaint as attempting to bring a FDCPA claim over actions that occurred during the foreclosing of the property. *Hulse*, 195 F. Supp. 2d 1188, 1204. Here, Plaintiff is not merely challenging the foreclosure process, but the activity of collecting the debt that fits within the confines of the FDCPA. Therefore, Plaintiff stated a claim for violation of the FDCPA.

**12.    Plaintiff Stated a Claim for Accounting.**

A cause of action for accounting requires a showing that a relationship between the plaintiff and defendant exists that requires an accounting and that some balance is due the plaintiff that can only be ascertained by an accounting. *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). "A plaintiff need not state facts that are peculiarly within the knowledge of the opposing party." *Id.* A fiduciary relationship between the parties is not required to state a cause of action for accounting. *Id.* at 179.

Plaintiff paid DEUTSCHE and/or CARRINGTON mortgage payments for a period of approximately four and a half years. (FAC ¶ 275.) As stated prior, particularly in III.B.10 and III.B.11, the money paid by Plaintiff was never actually owed to DEUTSCHE and/or CARRINGTON, thus the monies are to be returned to Plaintiff in full. (FAC ¶ 275.) The amount of money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be reasonably ascertained without a written accounting of the receipts and disbursements of monies paid by Plaintiff. Therefore Plaintiff stated a claim for accounting.

**13.    Plaintiff Stated a Claim for Quiet Title.**

Defendants contend that Plaintiff cannot maintain a claim for quiet title because of the failure to plead the legal description of the property and the failure to allege tender. Plaintiff stated the legal description of the property in paragraph 24 of the FAC. As stated in the first paragraph of the FAC, Plaintiff realleges and incorporates by reference all preceding paragraphs as through fully set forth herein. (FAC ¶ 277.) In regards to tender, as stated prior in section III.B.1., *supra*, Plaintiff is not required to allege tender because Plaintiff has stated multiple claims that attack the validity of the underlying debt, including fraud, predatory lending, and unfair and deceptive business acts. Requiring Plaintiff to allege tender would affirm the

underlying debt and thus be inequitable to do so. *Onofrio v. Rice*, 55 Cal. App. 4th at 424. Therefore, Plaintiff stated a claim for quiet title.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion for Sanctions and grant Plaintiff attorney's fees for Defendant's frivolous filing of this motion against him.


Dated: July 13, 2012                              CONSUMER LITIGATION LAW CENTER, APC



                                        BY:  */s/ SEPTEMBER J. KATJE*_____
                                             September Katje
                                             Attorney for Plaintiffs,
                                             OSIRIS HENDERSON

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

## DECLARATION OF SEPTEMBER KATJE

I, SEPTEMBER KATJE, DECLARE AS FOLLOWS:

1.      I am an attorney duly licensed to practice law before this Court and am an attorney with Consumer Litigation Law Center ("CLLC") and attorney of record for Plaintiff Osiris Henderson ("Plaintiff") in the above-captioned matter ("action").  I have been the lead attorney in this action since its inception.  Except where otherwise indicated, the following is true of my own, personal knowledge, and if called upon to do so, I could and would testify to the truth thereof.

2.      Based upon this review, it is my opinion that the Motion for Sanctions brought by Defendants' counsel was unwarranted.  This should have been readily apparent to Defendant's counsel, David L. Chaffin and Wright, Finley, & Zak, LLP ("WFZ"), had they conducted an objective review of it prior to filing.

3.      Plaintiff filed this action on February 24, 2012.  Defendants did not at this time file a Motion for Sanctions for this alleged "frivolous and bad faith action."  Defendants instead demurred on April 5, 2012, to which Plaintiff filed a First Amended Complaint on April 26, 2012 after considering all of the allegations in the demurrer.  Defendant then once again demurred on May 11, 2012 and proceeded to pepper Plaintiff with a Notice of Motion for Sanctions on May 24, 2012, three months after this action commenced.

4.      A motion for sanctions that oversteps the line of responsible advocacy may itself become sanctionable when the moving party fails to distinguish between vigorous advocacy and frivolous conduct.  See *Alliance to End Repression v. City of Chicago*, 899 F.2d 582, 583 (7th Cir. 1990).  The court may then require the moving party to pay attorneys' fees reasonably incurred in defending the motion for sanctions.  *Id.*  The court may impose sanctions sua sponte. Fed. R. Civ. P 11(c)(3).

5.      Prior to making this declaration, I have reviewed the records of CLLC.  These records reveal that Plaintiff has incurred approximately $7,870.00 in attorneys' fees and costs for review of the Motion for Sanctions and the legal research on and the drafting of the Opposition to the Motion for Sanctions.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**

6.      These fees were comprised of 25.3 total hours of work done by CLLC attorneys. Ernest Cardenas, Esq., spent 22.5 hours, at his standard reasonable rate for work of this nature at $160.00 per hour. Additionally, I spent 2.8 hours billed out at my standard rate for work of this nature at $275.00 per hour. I estimate an additional $3,500.00 will be incurred for future review of reply, research of reply, and attending the hearing.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 13, 2012, at Bonsall, California.

September Katje

---

2

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS**